**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SALAHUDIN MAJEED,
<u>Plaintiff-Appellant,</u>

v.

COLUMBUS COUNTY BOARD OF

EDUCATION; THOMAS N. NANCE, in
his capacity as Superintendent of
Columbus County Schools,
<u>Defendants-Appellees.</u>

No. 99-1341

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-97-1-7-F)

Argued: March 2, 2000

Decided: May 2, 2000

Before MOTZ and KING, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Lee Davis, III, Lumberton, North Carolina, for
Appellant. Andrew John Hanley, CROSSLEY, MCINTOSH, PRIOR
& COLLIER, Wilmington, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Salahudin Majeed filed this employment discrimination action against the Columbus County, North Carolina, School Board ("School Board") and Superintendent Thomas Nance for refusing to hire him for three separate job openings. A jury entered a verdict in favor of the School Board, and Majeed appealed, asserting insufficient evidence to support the verdict and several erroneous evidentiary rulings. We affirm.

I.

Salahudin Majeed, a black male, graduated from high school in Columbus County, North Carolina, and received his B.A. from North Carolina Central University. He then attended Winston-Salem State University where he earned 18 hours of credits towards a B.S. in computer science. Majeed then transferred to Appalachian State University to receive a masters in Public Administration with a concentration in statistical and computer science. Following his education, Majeed served for twelve years in the United States Army as a computer software analyst. He also taught computer science courses at several colleges.

After returning to Columbus County, Majeed began looking for job openings with the School Board in early August. When visiting the School Board on August 12, 1994, he learned about an opening for a Student Information Management System ("SIMS") operator, a data entry position categorized by the School Board as clerical. Majeed testified that he obtained an application for the SIMS position that same day and brought it home to complete. Majeed testified that he completed his application on August 16--the date he wrote on the application--and hand-delivered it to the School Board that same day. Majeed testified that when he returned his application, Bonita Prid-

2

gen, the School Board's personnel secretary, told him that they were still in the process of reading applications and conducting interviews. That same day, Majeed visited West Columbus High School where the position was to be filled and met with the principal, Dr. Danny McPherson. McPherson also told him that he was in the process of interviewing applicants. During this discussion, Majeed gave McPherson a copy of his resume, which McPherson said he would consider. Majeed was never called for an interview. The applicants who were granted interviews submitted applications dated from August 3 to August 17, 1994. Interviews were conducted on August 17 and 18, 1994. The School Board hired a white female applicant with an application dated August 17.

The School Board argues that it did not receive Majeed's application until after it had selected the applicants to be interviewed. Specifically, Pridgen testified that when Majeed completed his application she told him that McPherson had already reviewed the applications on file, and that she would put Majeed's application in the active file. Pridgen then told Majeed that if McPherson returned to the School Board's office because he was unhappy with the selections he had made, McPherson could then review Majeed's application. Pridgen could not remember the exact date Majeed filed his application.

Principal McPherson testified that Majeed's application was not in the file when he looked through it and identified seven applicants for consideration. Those seven names are listed on Pridgen's interview sheet. Three additional names, including Majeed's, were listed at the bottom of the interview sheet, but none of those applicants was interviewed. Pridgen testified that these names were of people who had requested interviews. She would have provided those names to McPherson only if they had requested to be interviewed before the principal had selected applications to be considered. McPherson testified that he could not remember what day he met with Majeed but that it occurred after he had pulled applications from the file, conducted interviews, and sent his recommendation for the position to Superintendent Nance. McPherson testified that he told Majeed that he was still in the process of reviewing applications only to be "cordial."

Majeed's testimony was that he next applied for a position as a Transportation Information Management System ("TIMS") operator,

3

also a data entry position categorized by the School Board as clerical. He saw a vacancy announcement for the position in October 1994 and again spoke to Pridgen. She directed him to speak with William Gore, the person responsible for TIMS hiring. Majeed initially spoke with the woman leaving the job. She told Majeed that he would be a "shoo-in" for the job because of his education and experience. Majeed then approached Gore about the position, who said he was unaware of the opening. Gore took Majeed's resume, said he would be considered, and told him to wait for a call. Majeed was not contacted for an interview, and the School Board eventually filled the position with a white female applicant.

Gore testified that he combed the applications in Pridgen's office and looked through the names. The applications did not indicate the race of each candidate, and Gore did not avoid "non-white" names. He then arbitrarily chose four applicants to interview without looking at all of the applications in the file. After reviewing the four applications he selected arbitrarily and conducting interviews, Gore ranked the four applicants. In all, Gore interviewed three white females and one black male. Based on Gore's recommendation, the School Board hired Krystal Spivey, a white female. Although Spivey's application indicated no particular education or experience in computers or computer programming, Gore stated that all new TIMS operators were given sufficient training in Raleigh.

Finally, in 1996, the School Board had an opening for a SIMS coordinator. The SIMS coordinator works in the county's central office and acts as a troubleshooter for the SIMS operators in the various schools. Dan Strickland, the associate superintendent for Columbus County Schools, was in charge of filling the position. Strickland testified that Majeed's application was on active file since 1994 and that Majeed was qualified for the coordinator position based on his experience. Strickland stated, however, that he wanted someone with prior SIMS operator experience to fill the coordinator position. Instead of reviewing the applications on file at the School Board's office, Strickland contacted individuals he knew had SIMS operator experience. The first two individuals he contacted were not interested. Strickland then contacted Michael Benton, a white male, who had previously worked as a SIMS operator. Benton was subsequently interviewed and hired for the position.

4

Majeed then filed this action against the School Board and Superintendent Nance under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1994) and 42 U.S.C.§ 1983 (1994). The district court dismissed the § 1983 charge for failing to state an equal protection violation and a jury reached a verdict in favor of the School Board on the Title VII count.

II.

Majeed first contends that the jury's verdict was not supported by sufficient evidence. To succeed under Title VII, a plaintiff must first state a prima facie case of discrimination. Once the plaintiff has met this requirement, the defendant then bears the burden of producing a legitimate, nondiscriminatory explanation for its failure to hire the plaintiff. "It is sufficient if the defendant's evidence [of a legitimate, nondiscriminatory reason] raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1980). If the defendant satisfies this burden of production, the plaintiff must prove by a preponderance of the evidence that the defendant's stated reason for refusing to hire the plaintiff was a pretext and that the real reason was based on the plaintiff's race. See Vaughan v. Metrahealth Companies, Inc., 145 F.3d 197, 201-02 (4th Cir. 1998) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). The ultimate burden of persuasion remains with the plaintiff.

Stipulating that Majeed stated a prima facie case of race discrimination, the School Board needed to satisfy its burden of production by presenting evidence of nondiscriminatory reasons for refusing to hire Majeed. For the SIMS operator, the School Board presented evidence that Majeed did not submit his application until after Principal McPherson had conducted interviews and submitted his recommendation for the position. Although Majeed disputes this evidence by noting that he dated his application before McPherson conducted the interviews, the School Board presented sufficient evidence to support its nondiscriminatory reason. For the TIMS operator position, the School Board presented evidence that Gore recommended a candidate by arbitrarily selecting four applications and interviewing just those four individuals. Although both an inadequate method of locating the best-qualified candidate for the job and inconsistent with School

5

Board policy that required reviewing all applications in the active file, this evidence constitutes a nondiscriminatory explanation. As for the SIMS coordinator position, the School Board presented evidence that Strickland specifically wanted to hire someone with experience as a SIMS operator. Although the School Board yet again failed to comply with its own policy of reviewing all applications, the School Board satisfied its burden to produce evidence of a nondiscriminatory explanation.

With the School Board satisfying its burden of production as to all three positions, Majeed was then required to satisfy his burden of persuasion that he was rejected for the positions because of his race. So long as the defendant satisfied its burden of production, it is impossible for a plaintiff to have a jury's verdict overturned for insufficient evidence because the ultimate burden of persuasion rests with the plaintiff. Therefore, the jury's verdict is supported by sufficient evidence.

III.

Majeed next appeals the dismissal of his § 1983 claim. In his Complaint, Majeed alleges that the School Board violated his rights under the Equal Protection Clause of the Fourteenth Amendment by refusing to hire him while interviewing and hiring less-qualified white applicants. A local government may be liable under§ 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell v. New York City Dept. of Soc. Services, 436 U.S. 658, 694 (1977). To state such a claim, a plaintiff must identify the specific policy or custom in the Complaint. See Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987).

The district court dismissed this claim sua sponte because Majeed failed to identify a specific policy or custom followed by the School Board that violated his equal protection rights. On appeal, Majeed points out that his Complaint did identify the School Board's policy and practice of allowing principals to recommend candidates without guidelines as having "a disparate impact on black applicants and

6

employees, including plaintiff."[1] Although this language does identify a specific policy or custom, it still fails to state an equal protection violation. Disparate impact alone cannot sustain an equal protection violation; instead, a plaintiff must allege a discriminatory purpose behind the offending policy. See Washington v. Davis, 426 U.S. 229, 239-42 (1976). Because the Complaint does not allege a discriminatory purpose, Majeed failed to state an equal protection violation.

IV.

Majeed next challenges the admissibility of statistical evidence presented by the School Board at trial. "A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion." United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994).

Majeed sought to prove that the School Board's nondiscriminatory reasons were pretextual by introducing evidence demonstrating pervasive racial discrimination towards its African American employees.[2]

_____

[1] Majeed included this language in his Complaint not as part of the § 1983 but within his Title VII claim.

[2] Both parties refer to Majeed's strategy here as a claim of "pattern and practice" discrimination. The term "pattern and practice" discrimination normally refers to the method to prove discrimination set forth in International Brotherhood of Teamsters v. United States , 431 U.S. 324 (1977). This methodology applies to claims brought by the federal government "against an employer charging systematic discrimination against a protected group." Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 759 (4th Cir. 1998), vacated on other grounds, 119 S. Ct. 2388 (1999). This methodology allows the government to establish a prima facie case that the employer followed such a practice. See id . at 760. "If the employer fails to rebut the government's prima facie case, the resulting finding of a discriminatory pattern or practice gives rise to an inference that all employees subject to the policy were its victims and are entitled to appropriate remedies." Id. This Court, however, has "decline[d] to give individual plaintiffs a pattern or practice cause of action or allow them to use the Teamsters method of proof." Id. at 761. Instead, Majeed sought to demonstrate that the School Board's nondiscriminatory reasons for failing to hire him were pretextual by using evidence of discrimination against other employees to create an inference of discrimination against himself.

7

To support this argument, two former employees and one current employee testified that the School Board had discriminated against them because of their race. None of these three witnesses had held any of the positions for which Majeed had applied. In anticipation of this testimony, the School Board sought to introduce the number of minorities employed in the SIMS and TIMS positions to negate these allegations of discriminatory intent. Relying on Carter v. Bell, 33 F.3d 450, 456 (4th Cir. 1994), the district court deemed this evidence admissible during a pretrial hearing so long as it was accompanied by the racial composition of the relevant applicant pool. In response to this mandate by the court, the School Board used a list of the applications for clerical positions in the active file when Majeed had applied for the positions in 1994. The School Board originally generated a copy of the list of applicants for the EEOC before Majeed filed this suit--a list the district court previously deemed inadmissible when Majeed sought to use it. Pridgen penciled-in the race of each of the ninety-six applicants on the list from information it had obtained to conduct background criminal checks through the North Carolina State Bureau of Investigation for each application, thus providing the racial composition for the applicant pool for the SIMS and TIMS positions to compare with employees in those positions at that time.

Majeed first contends that this evidence was inadmissible because he had not been provided a list that included each applicant's race. The School Board explained that it did not add the racial information until the district court required it at the pretrial conference to correspond with the racial composition of the SIMS and TIMS employees. The district court excluded the annotated list from the record but allowed Prigden to testify, based on her personal knowledge, as to the racial composition of this applicant pool by using an applicant list without racial identifications. Of the ninety-six applicants, sixty-four were white, twenty-six were African American, and six were Native American. Although twenty-seven percent of the applicant pool was black, over forty percent of the SIMS and TIMS employees were black.

This evidence came as no surprise to Majeed, who had requested the list of applicants to be introduced as his own exhibit (sans racial designation). It was after this discussion that the School Board determined the racial composition of the the applicant list because the dis-

8

trict court had ruled that the racial make-up of the work force could not be introduced without the corollary information as to the applicant pool. Prigden's testimony merely summarized the total number and percentage of black and white applicants that existed on the list and established the required foundation for further testimony as to the percentage ratio of black-to-white employees who were employed by the School Board. The district court merely permitted Pridgen to testify as to her personal knowledge of the racial composition of the applicant pool.

Majeed also argues that the information regarding the racial composition of both the applicant pool for the clerical file positions and the SIMS/TIMS employees were irrelevant as to why the School Board failed to hire Majeed. The School Board used this evidence to counter Majeed's argument of widespread discrimination by the School Board by showing that it filled the SIMS and TIMS positions with a higher percentage of black employees than had applications in the active file at the time. Normally, it is the plaintiff trying to introduce statistical evidence. "Such evidence may be used to establish an inference of discrimination as an element of the plaintiff's prima facie case or to demonstrate that an employer's stated nondiscriminatory reason for its action is in reality a pretext." Carter, 33 F.3d at 456. In the present case, the defendant sought to introduce data to rebut the plaintiff's attempt both to challenge the employer's nondiscriminatory reason and to prove that the real reason was discriminatory. Even assuming this data were "statistical" evidence, it was no less relevant than the testimony of other School Board employees introduced by Majeed to demonstrate pervasive racial discrimination by the School Board.

Majeed next argues that the statistical evidence was inadmissible without expert testimony. Although statistical evidence may be excluded if unsupported by expert testimony, see id. at 457, this guidance does not provide a per se rule. Rather, "[t]he usefulness of statistics depends on the surrounding facts and circumstances." Id. at 456 (citing International Brotherhood of Teamsters v. United States, 431 U.S. 324, 340 (1977)). In the present case, the School Board sought to counter allegations of widespread discrimination by demonstrating the higher percentage of African-Americans holding the positions for which Majeed applied than contained in the applicant pool. Under

9

these circumstances, expert testimony is unnecessary to complete the simple division to find the relevant percentages or to interpret the results in this posture to negate the inference of discrimination.

V.

Finally, Majeed appeals the decision of the district court to exclude several items of evidence. As noted above, we review evidentiary rulings for abuse of discretion. See Moore, 27 F.3d at 974.

Majeed first objects to the exclusion of requests for information sent by the EEOC to the School Board regarding its employment practices and information related to Majeed's application. Requests for information by the EEOC, however, are both irrelevant to Majeed's claims and inadmissible hearsay. Majeed next contends that a letter written by Nance to the EEOC providing requested information should not have been excluded. During a pretrial hearing, however, Majeed explained that he intended to use this material only for impeachment purposes, not as substantive evidence--a use the district court deemed appropriate. Majeed's objection is, therefore, groundless. Majeed's appeal of the district court's decision to prohibit him from introducing the applicant list is similarly without merit because he wanted to use the applicant list solely for impeachment purposes. Majeed also appeals the district court's decision to prohibit him from introducing a copy of a certificate showing that he had received special training related to the SIMS and TIMS positions. Majeed, however, failed to include a copy of this document in the joint appendix and we therefore cannot consider the objection to its exclusion.

Majeed also contends that the testimony of several witnesses was wrongly excluded or limited. Ms. Jacobs was to testify about a successful Title VII suit she filed against the School Board in 1981. The district court noted that the events in question were too remote in time and involved decision-makers who were no longer employed by the School Board. The district court also prohibited Melvin Powell from testifying about a settlement from a discrimination suit that occurred in 1981. Powell was allowed, however, to testify about his demotion that occurred in the 1994-95 school year because of its closer proximity to Majeed's claims. Finally, Majeed appeals the district court's decision to limit the testimony of Georgia Mathis, a teacher employed

10

by the School Board, and Billy Ray Rattley, who worked in the maintenance department. The district court ruled that Mathis could testify about discrimination she may have experienced, but that it would need to hear a proffer of evidence before allowing her to testify about the travails of other employees or applicants. Majeed, however, did not submit a proffer of Mathis' testimony at trial. As for Rattley, the district court limited his testimony to how the School Board may have discriminated against him but excluded any discussion about the EEOC charge he filed against the School Board. As to all four of these witnesses, the district court did not abuse its discretion by limiting their testimony to only those topics it properly deemed relevant to Majeed's claims of discrimination.

VI.

For these reasons, the district court is affirmed.

AFFIRMED

11